## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHSETTS

| | |
|---|---|
| EDWARD L. MANCHUR, individually and on behalf of others similarly situated | No. |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| SPIRIT AIRLINES, INC., | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiff, Edward L. Manchur, individually and on behalf of all others similarly situated, brings this action against Defendants Spirit Airlines, Inc. ("Spirit"), based upon personal knowledge as to his own actions and based upon the investigation of counsel regarding all other matters, complains as follows:

## I.      NATURE OF ACTION

1.      The United States is experiencing unprecedented hardship because of the novel coronavirus COVID-19.  Social distancing is the norm, individuals are required to or rationally and conservatively elect to shelter in place, unemployment is burgeoning, and the vast majority of Americans are now subject to a travel restrictions or some form of "quarantine."

2.      As a result of the foregoing, COVID-19 has particularly impacted travel, including air travel.

3.      Spirit has slashed its flight schedules, resulting in thousands of flight cancellations for thousands of passengers.  In addition to the difficulties these passengers are already experiencing, unconscionably, Spirit has added to these difficulties by refusing to issue monetary refunds to passengers whose flights Spirit has canceled.  It does so even though all airline passengers are entitled to a refund if the airline cancels a flight, regardless of the reason the airline cancels the flight. Instead, Spirit represents as follows (on its website https://customersupport.spirit.com/hc/en-us/articles/360006722717-COVID-19-Frequently-Asked-Questions):  *"We are not issuing refunds at this time, however, we are providing full value of your reservation in the form of a Reservation Credit good for 6 months."*

4.      The need for monetary refunds over travel vouchers is pressing during this time of crisis. Travel vouchers provide little security in this public crisis, particularly where many

individual Americans need money now to pay for basics like food and rent, not restrictive, temporary credits towards future travel which these individuals may never be able to use.

5.     Reflecting the need to provide individuals with such assistance, the Coronavirus Aid, Relief, and Economic Security Act ("CARES") is set to provide a bailout to the airlines, providing them about $58 billion in aid.  President Trump announced in press conference on April 9, 2020 that additional funding and financial aid will be provided to airlines. Despite this, Spirit refuses to comply with the law or countenance the exigent needs of its customers.

6.     Spirit's actions have financially damaged Plaintiff and the Class Members. Plaintiff's April 9, 2020 flight was cancelled by Spirit and Spirit unilaterally re-scheduled that flight for April 7, 2020, a date that neither Plaintiff nor his guest could accommodate.  Like so many other Spirit passengers, Spirit refused to issue a refund to Plaintiff, but rather sent Plaintiff an email on April 3, 2020 which states in relevant part concerning a voucher and limits for the voucher (the "Voucher Time Limits") as follows:

> "Your credit request has been processed. The details of this credit, including how it can be used, can be found below. No additional action is needed from you at this time.
>
> **Your reservation credit:**
>
> - can be booked anytime within 6 months of issue (see book by date below)
> - can be used to book any flight available on our website; our schedule typically runs 6 to 9 months out; for example, a credit issued on April 1, 2020, can be used to make a booking up to September 28, 2020, for travel through November 17, 2020

- can be used for multiple bookings until the full value is used
- can be applied toward airfare, bags, seats, vacation packages, taxes, and fees
- can be redeemed by any Guest linked to this reservation"

Spirit has engaged in unfair and deceptive conduct through its policy of refusing monetary refunds, limiting and forcing customers into a rebooked flight or travel voucher instead of returning their money, and limiting the voucher to time periods that are unreasonable.  Moreover, as further alleged below, Spirit has breached its so-called Contract of Carriage with its passengers.  As a result, Plaintiff brings this action because Plaintiff and the Class Members did not receive refunds for Spirit-cancelled and/or unilaterally re-scheduled flights, lost the benefit of their bargain and/or suffered out-of-pocket loss, and are entitled to recover compensatory damages, trebling where permitted, and attorney's fees and costs.

## II.    JURISDICTION AND VENUE

7.    This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the Class is a citizen of a State different from any Defendant, and in which the matter in controversy exceeds in the aggregate sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that the total claims of individual Class members in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d)(2) and (6). Plaintiff is a citizen and resident of the Commonwealth of Massachusetts, whereas Spirit is a citizen of Delaware and/or Florida for purposes of diversity. Therefore, diversity of citizenship exists

under CAFA as required by 28 U.S.C. § 1332(d)(2)(A).  Furthermore, Plaintiff alleges that more

than two-thirds of all of the members of the proposed Class in the aggregate are citizens of a

state other than Delaware and Florida, where this action is originally being filed, and that the

total number of members of the proposed Class is greater than 100, pursuant to 28 U.S.C. §

1332(d)(5)(B).

8.      Venue is appropriate in this District because it is where the Plaintiff resides and

resided at the time of the events complained of herein and it was the departure location for

Plaintiff's cancelled flight.  In addition, Spirit maintains a significant business presence in

Massachusetts as it conducts numerous non-stop flights in and out of Boston's Logan

International Airport.

### III.  PARTIES AND PLAINTIFF'S FACTS

9.      Plaintiff Edward L. Manchur is a citizen and resident of the Commonwealth of

Massachusetts. Plaintiff is and continues to be immediately affected by the COVID-19

pandemic.  As a lawyer, his services have been, since March 2020, declared by Governor Charlie

Baker as "non-essential."  As such, Plaintiff is urged to shelter in place.  Plaintiff is prohibited

from being in crowds of more than 10 people.  Despite being entitled to a refund for his

cancelled flight, Spirit has refused to provide Plaintiff a refund.

10.      Defendant Spirit Airlines, Inc. is a Delaware corporation authorized to do

business in Florida as a foreign corporation with a principal place of business at 2800 Executive

Way, Miramar, FL  33025.

11.      On March 4, 2020, Plaintiff purchased two tickets on a Spirit Airlines flight for domestic

travel to occur on April 9, 2020 for travel from Boston, Massachusetts to Ft. Myers, Florida.

Spirit ultimately cancelled his flight and gave notice to Plaintiff by email on March 20, 2020 that

it had re-booked him and his guest on a flight *two days prior* to his originally scheduled flight—

i.e., on April 7, 2020.  Plaintiff was unable to accommodate this flight change and requested a refund.  Instead, Plaintiff was informed by Spirit on March 20, 2020 that he had been issued a credit (a voucher) for travel on a future Spirit flight.

12.    Plaintiff paid $ 224.78 (inclusive of all fees and taxes) to purchase his tickets.

13.    At the time of his ticket purchase, Plaintiff understood and believed that he would be entitled to a refund if his flight was cancelled or re-booked by Spirit and Plaintiff was actually deceived by Spirit regarding his right to a refund and his options following his Spirit cancelled flights. Plaintiff requested a cash refund from Spirit but was offered a credit instead.

14.    In addition, as further alleged below in paragraphs 33-43, Spirit's Contract of Carriage ("Contract of Carriage") mandates refunds, not credits, in the situation where Spirit initiates a cancelation of a passenger's flight without re-booking the passenger or initiates a re-booking of a passenger's flight *other than* on the next "flight on which seats are available to the guest's original destination…".

## IV. FACTS

A.    **Background.**

15.    Spirit Airlines is an ultra-low cost, low-fare airline which operates scheduled flights throughout the United States, as well as the to the Caribbean, Mexico, Latin America and South America.  In 2018, they had the second highest revenue share in the world.

16.    Spirit sells its airline seat inventory and fares through Spirit's direct channels (including through its website(s) and the company's mobile applications) and through traditional travel agencies and online travel agencies. With each ticket sale, Spirit collects passenger identification information, including name, address, and telephone information.

010910-11/1253003 V1

17.     But regardless of the method by which Spirit sells its tickets, Spirit has engaged in unfair, deceptive, and unjust conduct and breached its Contract of Carriage agreement; namely, it is refusing to issue refunds to passengers for coronavirus related flight cancellations and re-bookings that are initiated by Spirit.

**B.     The Novel Coronavirus Shutdowns and Spirit's Resulting Flight Cancellations.**

18.     On December 31, 2019, governmental entities in Wuhan, China confirmed that health authorities were treating dozens of cases of a mysterious, pneumonia-like illness.  Days later, researchers in China identified a new virus that had infected dozens of people in Asia, subsequently identified and referred to as the novel coronavirus, or COVID-19. By January 21, 2020, officials in the United States were confirming the first known domestic infections of COVID-19.

19.     Due to an influx of thousands of new cases in China, on January 30, 2020, the World Health Organization officially declared COVID-19 as a "public health emergency of international concern."

20.     On January 31, 2020, the U.S. State Department warned travelers to avoid traveling to China, the U.S. federal government restricted travel from China, thus beginning travel restrictions affecting passengers ticketed on domestic and international air travel to and from the United States.

21.     By February 29, 2020, COVID-19 restrictions continued to spread across the globe. As the number of global cases rose to nearly 87,000, the U.S. federal government issued its highest-level warning, known as a "do not travel" warning, for areas in Italy and South Korea that were at that time the most affected by the virus. The government also banned all travel to Iran and barred entry to any foreign citizen who had visited Iran in the previous 14 days.

22.     On March 11, 2020, the World Health Organization declared COVID-19 a pandemic. That same day, American officials announced yet another travel ban expansion, this time blocking most visitors from continental Europe to the United States.

23.     Travel restrictions domestically began on March 16, 2020, with seven counties in the San Francisco, California area announcing shelter-in-place orders. Other states, counties, and municipalities have followed the shelter-in-place orders and as of the drafting of this Class Action Complaint, all states and the District of Columbia and several U.S. possessions have declared a state of emergency and its residents have been urged or ordered to stay home.

24.     As the restrictions expanded and virus fears mounted, Spirit cancelled flights in the United States because of the spreading impact of the coronavirus.

25.     In response to the CDC travel advisory, Spirit announced in early April, 2020 that it was temporarily suspending all flights to/from New York (LGA), Newark (EWR), Hartford (BDL), Niagara Falls (IAG), and Plattsburgh (PBG).  Spirit also announced that it will only operate 28 routes through May 2, 2020:  including, Chicago to/from Denver, Ft. Lauderdale, Ft. Myers, Houston, Las Vegas, and Los Angeles; Dallas to/from Detroit, Los Angeles, Orlando, and Phoenix; Detroit to/from Atlanta, Houston, Las Vegas, Los Angeles, Orlando, and Tampa; Ft. Lauderdale to/from Boston, Houston, New Orleans, Philadelphia, and San Juan; Las Vegas to/from Houston, San Diego, and Seattle; and Orlando to/from Atlantic City, Baltimore, Philadelphia, and San Juan.

26.     Ultimately, Spirit cancelled other flights, including Plaintiff's flight.

**C.     Spirit's Refusal Of Passenger Refunds On Cancelled Flights.**

27.     As Spirit announced flight cancellations (combined with decreased domestic bookings), Spirit took a variety of steps to make it impossible for consumers to receive

any refund on pandemic cancelled flights.  Spirit wanted to retain the money paid to Spirit, given the severe economic losses it was incurring related to pandemic flight cancellations. It does so despite consumers' right to receive a refund for unused transportation of its ticket in the circumstances complained of herein.

28.     Spirit's efforts to refuse and deny customers refunds contradicts established transportation requirements that operate for the benefit and protection of airline consumers (and, as alleged below) its own Contract of Carriage.

29.     As the Department of Transportation advises consumers of their rights: "If your flight is cancelled and you choose to cancel your trip as a result, you are entitled to a refund for the unused transportation—even for non-refundable tickets. You are also entitled to a refund for any bag fee that you paid, and any extras you may have purchased, such as a seat assignment."[1]

30.     Put another way, "[a] passenger is entitled to a refund if the airline cancelled a flight, regardless of the reason, and the passenger chooses not to be rebooked on a new flight on that airline."[2]

31.     Passengers are similarly entitled to a refund if an airline makes "a significant schedule change and/or significantly delays a flight and the passenger chooses not to travel."[3]

---

[1]          https://www.transportation.gov/individuals/aviation-consumer-protection/flight-delayscancellations

[2] https://www.transportation.gov/individuals/aviation-consumer-protection/refunds

[3] *Id.*

An increasing number of complaints has led the U.S. Department of Transportation to disclose on April 3, 2020 that it "is receiving an increasing number of complaints and inquiries from ticketed passengers, including many with non-refundable tickets, who describe having been denied refunds for flights that were cancelled or significantly delayed." The Department reminded carriers, including Spirit, of their "longstanding obligation to provide a prompt refund to a ticketed passenger when the carrier cancels the passenger's flight or makes a significant change in the flight schedule and the passenger chooses not to accept the alternative offered by the carrier."[45]   As numerous customers complained about the unlawful refund practice by Spirit and other airlines, the DOT issued an Enforcement Notice Regarding Refunds by Carriers Given the Unprecedented Impact of the COVID-19 Public Health Emergency on Air Travel ("DOT Notice").  The DOT Notice provides that the airlines must refund tickets if they cancel flights due to the novel coronavirus:

> The U.S. Department of Transportation's Office of Aviation Enforcement and Proceedings (Aviation Enforcement Office), a unit within the Office of the General Counsel, is issuing this notice to remind the traveling public, and U.S. and foreign carriers, operating at least one aircraft having a seating capacity of 30 or more seats, that passengers should be ***refunded promptly*** when their scheduled flights are cancelled or significantly delayed. Airlines have long provided such refunds, including during periods when air travel has been disrupted on a large scale, such as the aftermath of the September 11, 2001 attacks, Hurricane Katrina, and presidentially declared natural disasters. Although the COVID-19 public health emergency has had an unprecedented impact on air travel, ***the airlines' obligation to refund passengers for cancelled or significantly delayed flights remains unchanged.***
>
> The Department is receiving an increasing number of complaints and inquiries from ticketed passengers, including many with non-refundable tickets, who describe having been denied refunds for flights that were cancelled or significantly delayed. In many of these cases, the passengers stated that the carrier informed them that they would receive vouchers or credits for future

---

[4] https://www.transportation.gov/sites/dot.gov/files/2020-
[5] /Enforcement%20Notice%20Final%20April%203%202020_0.pdf

travel. But many airlines are dramatically reducing their travel schedules in the wake of the COVID-19 public health emergency. As a result, passengers are left with cancelled or significantly delayed flights and vouchers and credits for future travel that are not readily usable. ***Carriers have a longstanding obligation to provide a prompt refund to a ticketed passenger when the carrier cancels the passenger's flight or makes a significant change in the flight schedule and the passenger chooses not to accept the alternative offered by the carrier. The longstanding obligation of carriers to provide refunds for flights that carriers cancel or significantly delay does not cease when the flight disruptions are outside of the carrier's control (e.g., a result of government restrictions). The focus is not on whether the flight disruptions are within or outside the carrier's control, but rather on the fact that the cancellation is through no fault of the passenger.*** Accordingly, the Department continues to view any contract of carriage provision or airline policy that purports to deny refunds to passengers when the carrier cancels a flight, makes a significant schedule change, or significantly delays a flight to be a violation of the carriers' obligation that could subject the carrier to an enforcement action.[1]

(emphasis added).

32.     Spirit not only has a moral responsibility to provide real refunds (particularly in light of the substantial bailout it received from American taxpayers, including Plaintiff and the Class Members), it has a legal obligation to do so, including a contractual obligation to do so.

**Spirit's Contract of Carriage**

33.     Every Spirit passenger air travel ticket incorporates by reference (including in some cases by hyperlink) and is governed by Spirit's Contract of Carriage, which includes Spirit's Guest Service Plan. *See* Exhibit A.

34.     The Contract of Carriage is currently posted on Spirit's website at

https://content.spirit.com/Shared/en-us/Documents/Contract_of_Carriage.pdf.

35.     Article 10 of Spirit's Contract of Carriage governs refunds, including "Voluntary" and "Involuntary" refunds. The Contract's Involuntary refund terms apply when "Spirit is

unable to provide a previously confirmed seat and is unable to reroute the guest via Spirit." Contract of Carriage Art. 10.2.

36.    More specifically, the Contract of Carriage provides that "Guests involved in a Spirit Airlines cancellation or delay in excess of two (2) hours will have three (3) options available to them:  1) re-accommodation, 2) a credit for future travel, or 3) a refund." Contract of Carriage Art. 10.2.3.

37.    If no portion of the reservation has been used, "the refund will be equal to the fare paid by the guest." Contract of Carriage 10.2.1. If a portion of the reservation has been used, "the refund will be equal to the amount of the unused portion." Contract of Carriage 10.2.2.

38.    The Contract of Carriage at 8.2 also provides for refunds where Spirit is unable to rebook a passenger "on Spirit's first flight on which seats are available to the guest's original destination…".  Specifically, in that event, 8.2 provides that, "[g]uests…have the option to obtain a refund consistent with section 10.2.3."

39.    These involuntary refund terms include no exceptions or limitations based on the reason for Spirit's cancellation or failure to rebook on the Spirit's next flight following a cancellation.

40.    Rather, by the terms of the Contract of Carriage, when Spirit cancels a flight— regardless of reason (and cannot rebook on the next available Spirit flight)—passengers who had tickets on the cancelled flight have the option of receiving re-accommodation, a credit for future travel, ***or a refund***.

41.    In addition, Spirit's Guest Service Plan, which is incorporated as Article 15 of Spirit's Contract of Carriage, provides that Spirit will "Provide prompt reservation

refunds." Specifically, "[f]or guests due a refund, who purchased their reservations (including any charges associated with the fare) with a credit card, Spirit will process the credit within seven (7) business days." Contract of Carriage Art. 15.5.

42.     Upon information and belief, the terms of the Refund and Guest Service Plan Articles of Spirit's Contract of Carriage have been substantively identical from at least May 2016 and through April 2020.

43.     Here, Plaintiff was not given the choice of being transported on the next available flight at no additional charge. His flight was cancelled and there was no alternative "next" flight offered to him. Thus, pursuant to the terms of the Contract of Carriage, Plaintiff is entitled to a refund in U.S. Dollars to his original form of payment.

## V.     CLASS ACTION ALLEGATIONS

44.     Plaintiff sues under Rule 23(a), (b)(2) and Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and a Class defined as follows:

> All persons in the United States that purchased tickets for travel on Spirit Airlines flights scheduled to operate to, from, or within the United States from March 1, 2020 to the date a class certification order is issued in this action, whose flight(s) were cancelled by Spirit, and who were not provided a refund.

Excluded from the Class are Spirit, any entity in which Spirit has a controlling interest, and Spirit's legal representatives, predecessors, successors, assigns, and employees. Further excluded from the Class is this Court and its employees. Plaintiff reserves the right to modify or amend the Class definition, as appropriate, during this litigation.

45.     The definition of the Class is unambiguous. Plaintiff is a member of the Class he seeks to represent. Class Members can be notified of the class action through ticketing

contact information and/or address lists maintained in the usual course of business by Spirit.

46.     Class Members are so numerous and geographically dispersed that their individual joinder of all Class Members is impracticable. The precise number of Class members is unknown to Plaintiff but may be ascertained from Spirit's records. Given the hundreds or even thousands of flight cancellations made by Spirit, that number greatly exceeds the number to make joinder possible. Class Members may be notified of the pendency of this action by recognized, Court approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

47.     Spirit has acted or refused to act on grounds generally applicable to Plaintiff and the Class Members, making appropriate final injunctive relief and declaratory relief regarding the Class.

48.     Additionally, common questions of law and fact predominate over the questions affecting only individual Class Members. Some of the common legal and factual questions include:

a.      Whether Spirit engaged in the conduct alleged;

b.      Whether Spirit has a policy and/or procedure of denying refunds to Class Members for cancelled flights;

c.      Whether Spirit's policy or procedure of denying refunds to passengers on cancelled flights is unfair, deceptive, and/or misleading;

d.      Whether Florida law applies to the nationwide class;

e.      Whether Spirit violated consumer protection statutes and/or false advertising statutes and/or state deceptive business practices statutes;

-13-

f.      Whether Spirit violated the common law of unjust enrichment;

g.      Whether Spirit converted Plaintiff and the Class Members refunds and/or rights to refunds;

h.      Whether Spirit breached its obligations to Plaintiff and Class Members under its Contract of Carriage; and

i.      The nature and extent of damages and other remedies to which the conduct of Sprit entitles the Class Members.

49.    Spirit engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the Class Members. Similar or identical statutory and common law violations and deceptive business practices are involved. Individual questions pale by comparison to the numerous common questions that predominate.

50.    The injuries sustained by the Class Members flow, in each instance, from a common nucleus of operative facts—Spirit's misconduct. In each case Spirit has cancelled flights yet denied refunds to Class Members for such cancelled flights.

51.    The Class Members have been damaged by Spirit's misconduct through Spirit's practice of cancelling flights yet denying refunds to Class Members for such cancelled flights.

52.    Plaintiff's claims are typical of the claims of the other Class Members. Plaintiff paid for airline tickets and was actually deceived.

53.    Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is familiar with the basic facts that form the bases of the Class Members' claims. Plaintiff's interests do not conflict with the interests of the other Class

-14-

Members he seeks to represent. Plaintiff has retained counsel competent and experienced in class action litigation and intends to prosecute this action vigorously. Plaintiff's counsel has successfully prosecuted complex class actions, including consumer protection class actions. Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class Members.

54.     The class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the Class Members. The relief sought per individual members of the Class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of Spirit. It would be virtually impossible for the Class Members to seek redress individually. Even if the Class Members themselves could afford such individual litigation, the court system could not.

55.     Individual litigation of the legal and factual issues raised by the conduct of Spirit would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court. Given the similar nature of the Class Members' claims and the absence of material differences in the state statutes and common laws upon which the Class Members' claims are based, a nationwide Class will be easily managed by the Court and the parties.

010910-11/1253003 V1

## VI.   CAUSES OF ACTION

## COUNT I

## UNJUST ENRICHMENT

56.     Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

57.     At all times relevant hereto, Spirit sold Plaintiff and the members of the Class airline tickets for travel to, from, and within the United States.

58.     Spirit has benefitted from its unlawful acts by receiving payments for the sale of tickets on cancelled flights, though Spirit has no right to deny Plaintiff and the Class Members refunds for tickets purchased on Spirit cancelled flights.

59.     Plaintiff and members of the Class conferred upon Spirit a benefit in the form of money for tickets on specific flights. In paying for such flights, Plaintiff and the Class Members conferred benefits that were non-gratuitous.

60.     Spirit appreciated or knew of the non-gratuitous benefits conferred upon it by Plaintiff and members of the Class.

61.     Spirit accepted or retained the non-gratuitous benefits conferred by Plaintiff and members of the Class, with full knowledge and awareness that, because of Spirit's unconscionable wrongdoing, Plaintiff and members of the Class are entitled to refunds for cancelled flights. Retaining the non-gratuitous benefits conferred upon Spirit by Plaintiff and members of the Class under these circumstances made Spirit's retention of the non-gratuitous benefits unjust and inequitable.

62.     Because Spirit's retention of the non-gratuitous benefits conferred by Plaintiff and members of the Class is unjust and inequitable, Plaintiff and members of the Class are entitled to, and seek disgorgement and restitution of their Spirit's wrongful profits, ticket revenue on Spirit cancelled flights, and benefits in a manner established by the Court.

## COUNT II

## CONVERSION

63.     Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

64.     Plaintiff and the other members of the Class have an undisputed right to immediate refunds in lieu of rebookings and/or travel vouchers for their purchase of tickets on flights cancelled by Spirit.

65.     Spirit wrongfully exercised control over and/or intentionally interfered with the rights of Plaintiff and members of the Class by limiting passengers on Spirit cancelled flights to either a rebooked flight or a travel voucher. All the while Spirit unlawfully retained the monies Plaintiff and the Class Members paid for tickets on Spirit cancelled flights.

66.     Spirit deprived Plaintiff and the other members of the Class the value they paid for tickets on Spirit cancelled flights as well as their right for a refund.

67.     Plaintiff and members of the Class have requested and/or demanded or could by law demand that Spirit issue refunds for Spirit cancelled flights.

68.     This interference with the rights and services for which Plaintiff and members of the Class paid damaged Plaintiff and the members of the Class, in

-17-

that they purchased tickets and, as such, Spirit has deprived Plaintiff and members of the Class of the right to their property, in this case, the amounts paid for tickets on cancelled flights.

69.     Plaintiff and members of the Class may exercise their right to full refunds of all amounts paid for tickets on Spirit cancelled flights.

## COUNT III

## BREACH OF CONTRACT

70.     Plaintiff realleges and reincorporates its allegations in paragraphs 1 through 89 above as if fully set forth herein.

71.     This claim for breach of contract damages or, in the alternative, specific performance of the contract's refund terms, is based on Defendant's breaches of its Contract of Carriage, including its Guest Service Plan (the "Contract").

72.     Plaintiff, along with all putative class members, entered into a Contract with Defendant for provision of air travel in exchange for payment. This Contract was drafted by Defendant.

73.     Plaintiff, and all putative class members performed under the Contract, specifically, by tendering payment for the airline tickets to Defendant and complied with all conditions precedent under the Contract.

74.     Due to Defendant's cancellation of their flights, Plaintiff, and all putative class members cannot use their airline tickets through no fault of their own and they are not getting the benefit of their bargain with Defendant.

75.     Under the terms of the Contract of Carriage drafted by Defendant, Plaintiff and putative class members are entitled to refunds because Spirit cancelled their

flights. Contract of Carriage Art. 10. By failing to provide refunds, Spirit has breached its Contract of Carriage.

76.     Spirit has further breached its Contract of Carriage by failing to provide refunds within seven days for cancelled tickets purchased with credit cards. Contract of Carriage Art. 15.5.

77.     As a result of Defendant's breaches of contract, Plaintiff and the putative class members have incurred damages in an amount to be proven at trial.

## COUNT IV

## VIOLATION OF THE FLORIDA CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

78.     Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

79.     At all times, the Florida Consumer Fraud and Deceptive Business Practices Act

("Consumer Fraud Act") has prohibited consumer fraud in trade or commerce:

**501.204   Unlawful acts and practices.**
(1)    Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.
(2)    It is the intent of the Legislature that, in construing subsection (1), due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2006.

80.     Pursuant to the Consumer Fraud Act, Spirit had a statutory duty to refrain from unfair or deceptive acts or practices in the sale of airline tickets to Plaintiff

and the proposed Class Members and in handling refunds otherwise due to Plaintiff and the Class Members.

81.     Spirit intended that Plaintiff and the proposed Class Members rely on its material statements and omissions and unfair or deceptive acts regarding its refunds of airline tickets due to the unfair or deceptive acts or practices, including Spirit's unfair conduct, misrepresentations, and omissions of material fact regarding the ticket refunds; namely:

a.      Spirit's representations that passengers could only obtain a voucher or rebooking for a cancelled flight;

b.      Spirit's policies of limiting class members to travel vouchers and/or rebookings in lieu of refunds was deceptive, unfair, and unlawful; and

c.      Spirit committed unlawful acts by promoting, advertising, and selling airline tickets in a manner that violated passengers' rights to refunds.

82.     Spirit's unfair practice, deceptive representations, and material omissions to Plaintiff and the proposed Class Members were, and are, unfair and deceptive acts and practices.

83.     Spirit's unfair and deceptive acts and practices occurred while conducting trade or commerce.

84.     Spirit engaged in wrongful conduct while at the same time obtaining, under false pretenses, and retaining significant sums of money from Plaintiff and the proposed Class Members.

85.     Plaintiff and members of the Class were actually deceived by Spirit's misrepresentations and/or omissions of material fact.

86.     As a proximate result of the Spirit's misrepresentations and/or omissions of material fact, Plaintiff and the proposed Class Members were damaged and have suffered an ascertainable loss, in an amount to be determined at trial, including but not limited to amounts for tickets on Spirit-cancelled flights.

## COUNT  V

## ALTERNATIVE COUNT FOR VIOLATIONS OF
## STATE CONSUMER PROTECTION ACTS

87.     Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein and further alleges as follows:

88.     Count II is brought by Plaintiff, individually and on behalf of all similarly situated residents of each of the 50 states for violations of the state consumer protection acts including (provided that Plaintiff does not presently assert a right to pursue this Count II under the statutes corresponding to the underlying footnote 6):[6]

a.      the Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471, *et seq*.;

b.      the Arizona Consumer Fraud Act, Ariz. Rev. Stat. §§ 44-1521, *et seq*.;

c.      the Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq*.;

d.      the California Unfair Competition Law, Bus. & Prof. Code §§ 17200, *et seq*. and 17500, *et seq*.;

---

[6] Plaintiff also places Spirit on notice that he intends to amend his complaint to seek recovery for Class Members under the following statutes: Alabama Code § 8-19-10(e); Alaska Statutes § 45.50.535; California Civil Code § 1782; Georgia Code § 10-1-399; Indiana Code § 24-5-0.5-5(a); Maine Revised Statutes, Title 5 § 50-634(g); Massachusetts General Laws Chapter 93A, § 9(3); Texas Business & Commercial Code § 17.505; West Virginia Code § 46A6-106(b); and Wyoming Statutes § 40-12-109.

e.      the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.;

f.      the Colorado Consumer Protection Act, Colo. Rev. Stat. Ann. § 6-1-101, *et seq*.;

g.      the Connecticut Unfair Trade Practices Act, Conn. Gen Stat. Ann. § 42110, *et seq*.;

h.      the Delaware Consumer Fraud Act, 6 Del. Code § 2513, *et seq*.;

i.      the D.C. Consumer Protection Procedures Act, D.C. Code § 28-3901, *et seq*.;

j.      the Georgia Fair Business Practices Act, Ga. Code Ann. § 10-1-390, *et seq*.;

k.      the Hawaii Unfair Competition Law, Haw. Rev. Stat. § 480-2, *et seq*.;

l.      the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 501/1, *et seq*.;

m.      the Idaho Consumer Protection Act, Idaho Code. Ann. § 48-601, *et seq*.;

n.      the Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-2, *et seq*.;

o.      the Iowa Consumer Fraud Act, Iowa Code § 714.16, *et seq*.

p.      the Kansas Consumer Protection Act, Kan. Stat. Ann. § 50-623, *et seq*.;

q.      the Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq*.;

r.      the Louisiana Unfair Trade Practices and Consumer Protection Law, LSAR.S. 51:1401, *et seq*.;

s.      the Maine Unfair Trade Practices Act, Me. Rev. Stat. Ann. Tit. 5, § 207, *et seq*.;

t.      the Maryland Consumer Protection Act, Md. Code Ann. Com. Law, § 13-301, *et seq*.;

v.      the Massachusetts Regulation of Business Practices for Consumers Protection Act, Mass. Gen Laws Ann. Ch. 93A, *et seq.*;

w.      the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq.*;

x.      the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F, *et seq.*;

y.      the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407, *et seq.*;

z.      the Nebraska Consumer Protection Act, Neb. Rev. St. § 59-1601, *et seq.*;

aa.     the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. § 41.600, *et seq.*;

bb. the New Hampshire Regulation of Business Practices For Consumer Protection, N.H. Rev. Stat. § 358-A:1, *et seq.*;

cc. the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8, *et seq.*;

dd. the New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, *et seq.*;

ee.     the New York Consumer Protection from Deceptive Acts and Practices, N.Y. Gen. Bus. Law § 349, *et seq.*;

ff.     the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen Stat. § 75-1.1, *et seq.*;

gg.     the North Dakota Consumer Fraud Act, N.D. Cent. Code § 51-15, *et seq.*;

hh.     the Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01, *et seq.*;

ii.     the Oklahoma Consumer Protection Act, Okla. Stat. tit. 15 § 751, *et seq.*;

jj.     the Oregon Unlawful Trade Practices Act, Or. Rev. Stat. § 646.605,

*et seq.*;

kk.     the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq.*;

ll.     the Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.15.2(B), *et seq.*;

mm.     the South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-510, *et seq.*;

nn.     the South Dakota Deceptive Trade Practices and Consumer Protection, S.D. Codified Laws § 37-24-1, *et seq.*;

oo.     the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, *et seq.*;

pp.     the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Code Ann., Bus. & Con. § 17.41, *et seq.*;

qq.     the Utah Consumer Sales Practices Act, Utah Code. Ann. § 13-11-175, *et seq.*;

rr.     the Vermont Consumer Fraud Act, 9 V.S.A. § 2451, *et seq.*;

ss.     the Virginia Consumer Protection Act of 1977, Va. Code Ann. § 59.1-199, *et seq.*;

tt.     the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010, *et seq.*;

uu.     the West Virginia Consumer Credit And Protection Act, W. Va. Code § 46A, *et seq.*;

vv.     the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, *et seq.*; and

ww.     the Wyoming Consumer Protection Act, Wyo. Stat. Ann. § 40-12-101, *et seq.*

88.     The unfair and deceptive practices engaged in by Spirit described above, occurring in the course of conduct involving trade or commerce, constitute unfair

-24-

methods of competition and unfair or deceptive acts or practices within the meaning of each of the above- enumerated statutes.

89.     Spirit's acts and practices were unfair and created a likelihood of confusion or misunderstanding and misled, deceived, or damaged Plaintiff and members of the Class in connection with the sale and refunds of airline tickets. Spirit's conduct also constituted the use or employment of deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of a material fact with intent that others rely upon the concealment, suppression, or omission in connection with the sale or advertisement of goods or services, whether or not a person has in fact been misled, deceived, or damaged in violation of each of the above-enumerated statutes.

90.     Plaintiff, on behalf of himself and the Class Members, seek monetary damages, treble damages, and such other and further relief as set forth in each of the above-enumerated statutes.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and Class Members request that the Court enter an order or judgment against Defendants including:

A.     Certification of the action as a Class Action under Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, and appointment of Plaintiff as Class Representative and his counsel of record as Class Counsel;

B.     Damages in the amount of unrefunded monies paid for Spirit airline tickets;

C.      Actual damages, statutory damages, punitive or treble damages, and such other relief as provided by the statutes cited;

D.      Pre-judgment and post-judgment interest on such monetary relief;

E.      Other appropriate injunctive relief as permitted by law or equity, including an order enjoining Spirit from retaining refunds for Spirit cancelled flights;

F.      The costs of bringing this suit, including reasonable attorney's fees; and

G.      All other relief to which Plaintiff and members of the Class may be entitled by law or in equity.

## JURY DEMAND

Plaintiff demands trial by jury on his own behalf and on behalf of Class Members.


Dated: April 21, 2020                                    Respectfully submitted,

                                         *Michael A. Borrelli, Esq.*
                                         Michael A. Borrelli
                                          (BBO # 634352)
                                         806 Fox Run
                                         Middleboro, MA  02346
                                         Tel: (781) 983-7983
                                         lawyer2@earthlink.net


                                         *Attorney for Plaintiff, individually and on behalf of all others similarly situated.*

# EXHIBIT A